## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

NORMAN DALE ELLER,

                Plaintiff,

v.                                      CIVIL ACTION NO.  5:09-cv-00700

JACKSON KELLY PLLC, et al.,

                Defendants;


MARY L. FOX and
ESTATE OF GARY FOX,

                Plaintiffs,

v.                                      CIVIL ACTION NO.  5:09-cv-00701

JACKSON KELLY PLLC,

                Defendant;


CLARENCE O. CARROLL, et al.,

                Plaintiffs,

v.                                      CIVIL ACTION NO.  5:09-cv-00854

JACKSON KELLY, PLLC, et al.,

                Defendants.

## MEMORANDUM OPINION AND REMAND ORDER

Pending before the Court are Plaintiffs' Motions to Remand [Docket 14 in case 5:09-cv-700; Docket 12 in case 5:09-cv-701; Docket 16 in case 5:09-cv-854]. All three cases were filed in the Circuit Court of Raleigh County, West Virginia. Defendants timely removed the cases to this Court on the basis of federal question jurisdiction. (*E.g.*, Docket 1 in case 5:09-cv-701 at 2-3.) Plaintiffs now seek remand of the cases back to the Circuit Court of Raleigh County, contending that federal question jurisdiction is lacking because their claims neither "arise under" federal law nor raise a substantial and disputed issue of federal law.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

#### A. Background on Black Lung Benefits Act

The Black Lung Benefits Act (BLBA) is a remedial framework designed to provide benefits to coal miners and their dependents due to injury or death caused by a disease known as Coal Worker's Pneumoconiosis (CWP). *See* 30 U.S.C. § 901. Complicated CWP is a progressive lung disease caused by prolonged exposure to coal dust. Pursuant to the BLBA and implementing regulations, a coal miner must first contact the Department of Labor to file a claim for benefits, after which a pulmonary evaluation is performed to determine whether complicated CWP is present in the worker's lungs. Depending on the results of the medical evaluation and other evidence, the Department of Labor issues a proposed decision and order either approving or denying an award of benefits. Within 30 days of the proposed decision and order, either the coal miner or the coal company may request a hearing before an Administrative Law Judge (ALJ) to revisit the Department's benefits determination. *See generally* 20 C.F.R. pt. 725. The ALJ will typically hold a hearing, receive additional testimony, and render a written decision on the claim. *See generally*

2

*id.* pt. 725, subpt. F.  Additional review of the ALJ's decision may be undertaken with the Benefits Review Board, then the court of appeals in the appropriate circuit, then finally, the Supreme Court of the United States.  *See* 20 C.F.R. §§ 802.301 and 802.410.

Plaintiffs Norman Dale Eller, Gary Fox, and Clarence O. Carroll were all coal miners who sought benefits pursuant to the BLBA.  Their cases arise out of alleged fraudulent misrepresentations by Defendant Jackson Kelly, PLLC, during its representation of various coal companies in the black lung administrative proceedings of the named plaintiffs and others.  According to Plaintiffs, Jackson Kelly disclosed incomplete or inaccurate reports to the ALJ in their respective hearings, as well as to some of Jackson Kelly's own experts and Plaintiffs.[1]  In addition to damages for the alleged fraudulent misrepresentation, Plaintiffs seek "declaratory and injunctive relief requiring Jackson Kelly to disclose those cases in which it has engaged in the fraudulent misrepresentations described in [the various] Complaint[s], to declare that Jackson Kelly's practices, as set forth in the Complaint[s] and as proven at trial, are contrary to law, and to order Jackson Kelly to cease and

---

[1] Formal ethics charges were filed against one of Jackson Kelly's attorneys, Douglas A. Smoot, for similar misconduct in a black lung administrative hearing.  In early 2009, the West Virginia Office of Disciplinary Counsel (ODC) alleged that Mr. Smoot disassembled an expert medical report, and he provided the favorable portions of the report to the ALJ and opposing party while withholding the portions of the report that were potentially damaging to his client.  (Docket 45-1 at 8-10.)  Mr. Smoot represented to all parties that the expert report, as he submitted it, was complete.  (*Id.* at 9.)  The ODC charged Mr. Smoot with violating Rules 3.4 (fairness to opposing party and counsel), 4.3 (attorney dealings with unrepresented persons), and 8.4 (attorney misconduct) of the West Virginia Rules of Professional Conduct.  (*Id.* at 14, 17.)  On March 30, 2010, a three-member Hearing Panel Subcommittee, composed of two attorneys and one lay member, recommended dismissing the charges against Mr. Smoot, stating that the ODC failed to carry its burden of establishing by clear and convincing evidence that Mr. Smoot violated any ethics rules.  (Docket 39-1 at 26.)  On November 17, 2010, the Supreme Court of Appeals of West Virginia rejected the recommendation of the Panel and instead found that Mr. Smoot violated Rules 3.4 and 8.4.  (Docket 45-1 at 29, 33.)  In particular, the Supreme Court found that Mr. Smoot's conduct amounted to "conduct involving dishonesty, fraud, deceit, or misrepresentation," as proscribed by Rule 8.4(c).  (*Id.* at 32-33.)

desist from those practices in the future." (*E.g.*, Docket 1-1 in case 5:09-cv-701 at 7.) The *Eller* and *Carroll* Plaintiffs also allege legal malpractice against Defendants Rundle & Rundle, LC, S.F. Raymond Smith, and Joni Cooper Rundle (together "Rundle Defendants") for failing to meet the applicable professional standard of care in their representation of Plaintiffs Eller and Carroll during their respective BLBA administrative claims.

   B. *Eller v. Jackson Kelly, PLLC, et al., 5:09-cv-700*

   Plaintiff Norman Dale Eller was a retired coal miner who sought benefits pursuant to the BLBA sometime in late 2001 or early 2002. (Docket 1-1 at 43.) According to Mr. Eller's counsel at the remand hearing, he is now deceased. (Docket 57.) Mr. Eller filed an amended complaint in state court on May 19, 2009, alleging both fraudulent misrepresentations by Defendant Jackson Kelly, PLLC, and legal malpractice by the Rundle Defendants. (Docket 1-1 at 31-50.) Defendants removed the case to this Court on June 19, 2009, asserting federal question jurisdiction. (Docket 1.)

   Mr. Eller's complaint specifically alleges that Jackson Kelly attorneys encouraged its experts and the ALJ to rely on a medical opinion it knew was incomplete or inaccurate. (Docket 1-1 at 43-45.) According to the *Eller* complaint, Jackson Kelly furnished diagnostic films from a CT scan of Mr. Eller's lungs to an expert radiologist, Dr. Wiot. Dr. Wiot opined that CWP could not be excluded as a diagnosis based on the CT films because the films were incomplete and could not form the basis of a full medical opinion. (*Id.* at 43.) Subsequently, Jackson Kelly furnished the allegedly incomplete CT films to two other expert radiologists, who also noted the incompleteness of the films but opined that complicated CWP was not present. Plaintiff Eller asserts that Jackson Kelly knew the films were not competent evidence and were actually irrelevant to the issue of CWP, but it

4

proceeded to introduce the films into evidence and seek opinions based on the films nonetheless. (*Id.* at 44.)  Additionally, Jackson Kelly allegedly encouraged other experts to opine based on the CT films it knew to be faulty.  (*Id.* at 45.)  These actions are the basis of Count I of the *Eller* complaint, which asserts fraudulent misrepresentation against Jackson Kelly.

The *Eller* complaint also alleges that during the pendency of Mr. Eller's first administrative hearing and appeal, the Rundle Defendants "failed to meet the standard of care applicable to attorneys representing claimants in black lung" proceedings.  (Docket 1-1 at 47.)

   *C.  Fox v. Jackson Kelly, PLLC, 5:09-cv-701*

Plaintiff Gary Fox was a coal miner who sought benefits pursuant to the BLBA.  He is now deceased.  Mr. Fox's widow, Mary L. Fox, initiated this suit individually and in her capacity as Administratrix of the estate of Gary Fox on May 21, 2009.  (Docket 1-1 at 6.)  The *Fox* complaint alleges fraudulent misrepresentations by Defendant Jackson Kelly, PLLC, during its representation of Elk Run Coal Company in Mr. Fox's black lung administrative proceeding.  Defendant Jackson Kelly removed the case to this Court on June 19, 2009, asserting federal question jurisdiction. (Docket 1.)

In May 1999, Mr. Fox filed his initial claim for benefits with the Department of Labor. Based on the evidence presented to the Department of Labor, Mr. Fox was approved for benefits sometime in 2000.  (Docket 1-1 at 18.)  Mr. Fox's former employer, Elk Run Coal Company, contested the claim and benefits award, and the case was referred to an ALJ for more thorough discovery and a hearing.  (*Id.*)  The *Fox* plaintiffs specifically allege that, in the process of developing a more complete record before the ALJ, Jackson Kelly "knowingly submitted evidence that misrepresents the facts, including, in some cases, the opinions of their experts, to the ALJs who

5

hear black lung claims." (*Id.* at 8.)  Plaintiffs additionally allege that Jackson Kelly misrepresented reports and testimony to their own experts in an attempt to manipulate the evidence, as well as mislead benefit claimants.  (*Id.* at 8-9.)

Particular to Mr. Fox, it is alleged that Jackson Kelly encouraged its experts and the ALJ to rely on a medical report it knew was inaccurate or incomplete.  (*Id.* at 17-19.)   Plaintiffs point specifically to Jackson Kelly's sole reliance on a pathology report that concluded Mr. Fox had a "pseudotumor" and not complicated CWP, rather than the opinions of its two retained experts, who made findings consistent with CWP.  (*Id.* at 19.)  In addition to allegedly supplying other experts with only the favorable report, Plaintiffs claim that Jackson Kelly procured deposition testimony to intentionally misconstrue the evidence and indicate that all pathology evidence ruled out complicated CWP.[2]  (*Id.* at 17.)  These actions are the basis for Plaintiffs' claims that Jackson Kelly acted inconsistently with its ethical and legal duties, namely failing to act with candor to the tribunal and engaging in knowingly fraudulent conduct toward Mr. Fox.  The sole cause of action named in the *Fox* complaint is fraudulent misrepresentation against Jackson Kelly.  (*Id.* at 25.)

### D.  *Carroll v. Jackson Kelly, PLLC, et al., 5:09-cv-854*

Plaintiff Clarence O. Carroll worked in a coal mine from about 1937 until 1982.  (Docket 1-1 at 37.)  According to Mr. Carroll's counsel at the remand hearing, he is now deceased.  (Docket 53.) Mr. Carroll filed an amended complaint in state court on June 24, 2009, alleging both fraudulent misrepresentations by Defendant Jackson Kelly, PLLC, and legal malpractice by the Rundle

---

[2]  Plaintiffs became aware of the two retained expert opinions after the ALJ compelled production of certain Jackson Kelly discovery materials during Mr. Fox's second case.  (*Id.* at 23.)  Plaintiffs claim that Jackson Kelly conceded Mr. Fox's second case and agreed to Mr. Fox's receipt of benefits initially to avoid disclosing the alleged inaccurate or incomplete documents.  (*Id.*)

Defendants.  (*Id.* at 25-45.)  Defendants removed the case to this Court on July 27, 2009, asserting federal question jurisdiction.  (Docket 1.)

After retiring, Mr. Carroll filed a series of four benefit claims with the Department of Labor, seeking BLBA payments in 1982, 1991, 1995, and 2006.  (Docket 1-1 at 37.)  Jackson Kelly represented the coal company-defendant, Westmoreland Coal Company, in each of the four administrative claims.  (*Id.* at 38.)  As to Mr. Carroll, the complaint alleges that Jackson Kelly presented a series of five pulmonary x-rays to a physician, which resulted in the conclusion that Mr. Carroll had complicated CWP.  (*Id.* at 39.)  Then, nearly two and a half years later, Jackson Kelly re-furnished only one of the pulmonary x-rays to the same physician, which resulted in the conclusion that Mr. Carroll did not have complicated CWP.  (*Id.*)  Only the favorable conclusion was supplied to the ALJ.  The complaint states that "[b]y submitting such a skewed selection of [the] x-ray readings, withholding [the doctor's] serial reading, and, instead, furnishing a second more favorable reading of the [single] x-ray by itself, Jackson Kelly attorneys knowingly misrepresented the opinions of [the physician] to the ALJ."  (*Id.* at 40.)  The Carroll complaint further alleges, as do the other two complaints, that Jackson Kelly compounded its misrepresentation to the ALJ by encouraging other experts to rely on only the favorable initial conclusions, as well soliciting misleading deposition testimony.  (*Id.* at 40-41.)

The *Carroll* complaint also alleges that during the pendency of Mr. Carroll's third administrative hearing, the Rundle Defendants "failed to meet the standard of care applicable to attorneys representing claimants in black lung" proceedings.  (Docket 1-1 at 43.)  Finally, and unique to the *Carroll* complaint, Plaintiff Carroll seeks class certification to proceed with a lawsuit

on behalf of other black lung claimants who have allegedly been subjected to similar misconduct by Jackson Kelly.  (*Id.* at 44-45.)

## II.  DISCUSSION

### A.  Legal Standard and Applicable Law

United States "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).  The party seeking removal bears the burden of showing that federal jurisdiction exists. *Singh v. Prudential Health Care Plan, Inc.*, 335 F.3d 278, 280 (4th Cir. 2003); *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir.1994).  Because removal jurisdiction is strictly construed, all doubt is resolved in favor of remand.  *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 107-09 (1941); *Mulcahey*, 29 F.3d at 148; *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993) (citing *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 10 (1951)).  When a removing party seeks to invoke the court's "arising under" jurisdiction, 28 U.S.C. § 1331, the federal question typically must be evident from the face of the plaintiff's well-pleaded complaint. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 10 (1983); *Custer v. Sweeney*, 89 F.3d 1156, 1165 (4th Cir. 1996) (instructing that courts are to "look no further than the plaintiff's complaint in determining whether a lawsuit raises issues of federal law capable of creating federal-question jurisdiction.").  The assertion of a defense based on federal law is insufficient to create "arising

8

under" jurisdiction if the complaint consists entirely of state law claims. *See Franchise Tax Bd.*, 463 U.S. at 10.

Even if state law creates the claims asserted by the plaintiff, federal question jurisdiction nonetheless is proper in cases in which "the plaintiff's right to relief *necessarily depends* on resolution of a *substantial question* of federal law, in that federal law is a necessary element of one of the well-pleaded . . . claims." *Pinney v. Nokia, Inc.*, 402 F.3d 430, 442 (4th Cir. 2005) (emphasis added). In order to remove a case in which state law creates the plaintiff's cause of action, a defendant "must establish two elements: (1) that the plaintiff's right to relief necessarily depends on a question of federal law, and (2) that the question of federal law is substantial." *Dixon v. Coburg Daily, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004); *see also Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313 (2005) ("[F]ederal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum."). The Supreme Court in *Grable* formulated the jurisdictional test as follows: "[D]oes the state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities[?]" 545 U.S. at 314.

In addition to causes of action "arising under" federal law and those arising under state law though raising a substantial and disputed question of federal law, federal courts may exercise subject-matter jurisdiction in situations where a plaintiff's state law claims are completely preempted by federal law. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004). If "the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Id.* at

9

207-08 (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)).  Thus, civil actions

containing state law claims that are completely preempted are removable to federal court as well.

*See id.* at 210.

   B.  *Complete Preemption Argument*

   In its briefing, Jackson Kelly appears to waver on the issue of complete preemption.  On the

one hand, Jackson Kelly seems to argue that Plaintiffs' state law claims are subject to complete

preemption, for instance, when it states that "[t]he exclusivity and penalty provisions . . . [of] the

BLBA demonstrate a congressional intent that state causes of action are preempted."  (Docket 20

at 10.)[3]  On the other hand, Jackson Kelly expressly states that complete preemption is "a position

not advanced by Jackson Kelly in removing the present case."  (*Id.* at 12 n.3.)  Notwithstanding this

ambiguity, it is clear to the Court following oral argument that Jackson Kelly does not argue that the

BLBA completely preempts common law tort suits, such as the ones at issue in this case.[4]  Instead,

Jackson Kelly contends that the "Court has federal question jurisdiction to decide the *applicability*

of the BLBA, and such exclusive and completely preemptive jurisdiction serves as a proper basis

for removal."  (Docket 20 at 13 (emphasis added).)  At the outset, it must be noted that federal

district courts, and indeed all courts, have the inherent jurisdiction to determine their own subject

matter jurisdiction.  *See Constantine v. Rectors & Visitors of Geo. Mason Univ.*, 411 F.3d 474, 480

(4th Cir. 2005) ("A federal court has an independent obligation to assess its own subject-matter

---

[3]  Jackson Kelly's substantive arguments are highly similar in all three cases.  All citations to the record in Part II are to *Fox v. Jackson Kelly*, 5:09-cv-701.

[4]  At the remand hearing on Thursday, February 3, 2011, counsel for Jackson Kelly expressly disclaimed the notion that the BLBA completely preempts substantive tort law in response to a direct inquiry from the Court.  Thus, all parties agree that no federal cause of action has been in any of the complaints, either expressly or via complete preemption.

jurisdiction, and . . . subject-matter limitations . . . 'must be policed by the courts on their own initiative . . . .'") (quoting *Ruhgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)); *see also* 35A C.J.S. *Federal Civil Procedure* § 525 (2010) ("Federal courts may and must determine for themselves the question of their jurisdiction.") (citing *Mont.-Dakota Utils. Co. v. Nw. Pub. Serv. Co.*, 341 U.S. 246 (1951); *Texas & Pac. Ry. Co. v. Gulf Colo. & Santa Fe Ry. Co.*, 270 U.S. 266 (1926)).  Thus, the Court has the power to determine the applicability question, whether asserted by Jackson Kelly or not, insofar as it is necessary to determine the Court's subject matter jurisdiction.

In making its argument that the Court has jurisdiction to decide the applicability question, Jackson Kelly relies almost exclusively on the Fourth Circuit's opinion in *Shives v. CSX Transportation, Inc.*, 151 F.3d 164 (4th Cir. 1998), but *Shives* is distinguishable from this case. *Shives* committed to federal courts alone the determination of a question of *substantive* federal law that the court found to be a "conceptual antecedent" to the exercise of federal subject matter jurisdiction in that case.  *Id.* at 172.   In *Shives*, a plaintiff filed suit in state court alleging a violation of the Federal Employers Liability Act (FELA).  The defendant removed the case to federal court, arguing that the plaintiff's claims must be brought pursuant to the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), not FELA.  *Id.* at 166.  By way of background, state and federal courts have concurrent jurisdiction to hear FELA cases, 45 U.S.C. § 56, and a FELA case filed in state court cannot be removed to federal court.  28 U.S.C. § 1445(a).  In contrast, only the Department of Labor has original jurisdiction to hear claims brought pursuant to the LHWCA.  *See* 33 U.S.C. § 901 *et seq.*  Importantly, if a complained injury is found to be within the scope of the LHWCA, then a plaintiff is completely preempted from pursuing a FELA claim.  *Chesapeake & Ohio Ry. Co. v. Schwalb*, 493 U.S. 40, 42 (1989).  It is therefore imperative to determine the

11

applicable statute at the outset of any case alleging facts that approach the purview of the LHWCA. The probative questions in determining whether a claim is preempted by the LHWCA are whether the plaintiff was injured on "navigable waters," as defined by 33 U.S.C. § 903(a), and whether the plaintiff was engaged in "maritime employment," as defined by 33 U.S.C. § 902(3), at the time of injury. *Shives*, 151 F.3d at 168. These are clearly questions of substantive federal law. Thus, in order to assess which forum is proper for a given suit, it must be determined which law applies—FELA, which may be heard in either a state or federal court, or the LHWCA, which may only be heard by a federal agency. The quandary inherent in this process, which the *Shives* court directly addressed, is that a determination of the applicable law necessarily requires a court to reach behind the jurisdictional analysis, into substantive federal law, and interpret the terms "navigable waters" and "maritime employment" as they are defined by the LHWCA. The *Shives* court called this determination a "conceptual antecedent" to the jurisdictional analysis, and it held that answering the antecedent question of federal law "is exclusively a federal question which Congress never intended for state courts to resolve." *Id.* at 167.

In sum, *Shives* involved a unique situation in which the district court had to choose which of two exclusive federal laws applied to a case, an analysis that required interpretation and application of certain definitions in one of the federal laws. In order to ensure uniformity in the interpretation and application of that substantive federal law, the *Shives* court refused to remand the conceptual antecedent questions to state court. Similar concerns for the integrity and uniformity of federal law are not present in the matter before the Court. In this case, the Court is not required to interpret and apply to these facts substantive BLBA law in order to discern whether or to what extent Plaintiffs' claims are properly before the Court. Instead, the Court is presently tasked with

12

determining whether the state law claims actually "arise under" federal law or will otherwise require the resolution of a substantial and disputed federal issue. In undergoing the jurisdictional analysis, the Court examines a plaintiff's claims and asks whether they may be resolved without deciding serious and disputed questions of federal law. In contrast, the *Shives* court acknowledged that *actually resolving* questions of substantive federal law was necessarily the starting point of any jurisdictional analysis because of the unique interaction of the two federal laws at issue in that case. For this reason, *Shives* is inapposite.

It is also noteworthy that the laws in this case are dissimilar to those in *Shives*. The *Shives* court dealt with the LHWCA, which the Supreme Court has stated completely precludes FELA claims if it factually applies. *Schwalb*, 493 U.S. at 42 ("If respondents' injuries are covered by [LHWCA] . . . the remedy provided by that Act is exclusive and resort may not be had to [FELA].""). In contrast, neither the Supreme Court nor any other court has held that the BLBA completely preempts state tort law, and Jackson Kelly has conceded that it does not. The import of this distinction cannot be overstated. The plaintiffs in *Shives* would have been unable to sustain their FELA suit in any court if it was determined that the LHWCA applied because the Supreme Court has instructed that FELA suits are completely foreclosed by the LHWCA wherever it is factually applicable. In short, once the facts of an injury case trigger the provisions of the LHWCA, that statute provides the sole remedy for a plaintiff. No similar preemption directive has been given by either Congress or the Supreme Court as to the BLBA. Thus, even if the Court were to determine that the facts in this case could invoke certain provisions of the BLBA, such that Plaintiffs could have sued under that statute if they had chosen to do so, there is nothing to preclude Plaintiffs from proceeding with state law tort suits in state court that happen to be based on the same underlying

facts.  Again, there is no "conceptual antecedent" in this case, which in *Shives* required interpretation and application of substantive federal law in a unique jurisdictional scheme involving two federal statutes.

### C.  Substantial and Disputed Question of Federal Law Argument

Jackson Kelly also argues that Plaintiffs' claims raise at least two issues of federal law that are substantial and disputed, such that federal jurisdiction is proper: (1) the applicability of the BLBA to this case and (2) "the direct and sweeping manner in which [Plaintiffs] [are] attempting to regulate the duties of parties and their attorneys in conducting discovery, admitting evidence, or otherwise prosecuting or defending federal black lung claims."  (Docket 20 at 15.)

In *Smith v. Kansas City Title & Trust Co.*, the Supreme Court stated that a state law claim may give rise to federal question jurisdiction if it "appears from the [complaint] that the right to relief depends upon the construction or application of [federal law]."  255 U.S. 180, 199 (1921).  Since *Smith v. Kansas City*, this doctrine has been scaled back, so that "federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum."  *Grable*, 545 U.S. at 313 (citations omitted).  Under the modern substantial federal question doctrine, "a defendant seeking to remove a case in which state law creates the plaintiff's cause of action must establish two elements: (1) that the plaintiff's right to relief necessarily depends on a question of federal law, and (2) that the question of federal law is substantial."  *Pinney*, 402 F.3d at 442 (citing *Dixon*, 369 F.3d at 816).  Even if both elements are present, however, the exercise of federal jurisdiction is subject to a possible veto if federalism concerns so demand.  *See Grable*, 545 U.S. at 313-14 (the exercise of federal jurisdiction must be "consistent with congressional judgment about the sound division of

labor between state and federal courts" and "there must always be an assessment of any disruptive portent in exercising federal jurisdiction"). No matter how important, or even decisive, federal law may be in the later stages of a case, if no substantial federal issue is raised as a legitimate part of a plaintiff's claim for relief, there exists no federal question jurisdiction under 28 U.S.C. § 1331. *See Franchise Tax Bd.*, 463 U.S. at 10. The Fourth Circuit has stated that it is a "small class of cases" where state law creates a plaintiff's claim, but federal jurisdiction is nonetheless proper. *See Pinney*, 402 F.3d at 442.

Jackson Kelly's first argument, that the applicability of the BLBA to Plaintiffs' claims is itself a substantial and disputed federal question, is untenable. Plaintiffs' right to relief does not necessarily depend on the Court's resolution of this question. "A plaintiff's right to relief necessarily depends on a question of federal law when 'it appears that some . . . disputed question of federal law is a necessary element of one of the well-pleaded state claims.'" *Pinney*, 402 F.3d at 442 (quoting *Franchise Tax Bd.*, 463 U.S. at 13). If, on the other hand, a plaintiff can establish every essential element of his state law claim without resort to a substantial issue of federal law, then the claim does not "necessarily depend on a question of federal law." *See id.*

The BLBA does not completely preempt state law tort suits, and Plaintiffs in these cases can prove each essential element of their fraud claims without reference to the BLBA's applicability or inapplicability. In West Virginia, the elements of fraudulent misrepresentation are:

> (1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it.

Syl. pt. 1, *Lengyel v. Lint*, 280 S.E.2d 66 (W. Va. 1981) (explaining the components of actionable "fraudulent representations"). There is no ostensible reason to pass on the applicability of the BLBA

to the facts outlined in the complaints in deciding whether the alleged misrepresentation was material, false, relied upon, or resulted in damages, as required by the state law causes of action pled here.  Although the determination of whether and how the BLBA might affect these cases is an important and apparently disputed issue concerning a federal law, resolution of Plaintiffs' state law claims does not require the Court to answer the applicability question.  Under *Grable* and *Pinney*, the Court does not have subject matter jurisdiction on this basis because resolving the applicability of the BLBA is not an integral step in analyzing Plaintiffs' state law fraud claims.  The applicability of the BLBA to Plaintiffs' legal malpractice claims fails to establish a substantial and disputed federal question for the same reasons.

As to Jackson Kelly's second argument, that a multitude of substantial federal questions are inherent in the complaints, the Court reaches a similar conclusion.  The face of Plaintiffs' complaints allege state law causes of action, essentially contending that Jackson Kelly acted knowingly in submitting evidence that misrepresented facts in BLBA proceedings and that the Rundle Defendants were negligent in failing to detect the misrepresentations.  These allegations cannot be said to require substantial interpretation of federal BLBA law.  While some aspects of the fraud and malpractice suits may ultimately reference regulations and procedures present in the BLBA administrative process,[5] nothing in the BLBA creates the state law causes of action nor is any

---

[5]  For example, at oral argument, Jackson Kelly suggested that in order to prove or disprove the reliance element of the fraud claim,  a court must examine federal regulations to discern the proper items for consideration by an ALJ in the BLBA process.  Simply referring to BLBA regulations, however, is insufficient to confer federal jurisdiction.  The substance of Plaintiffs' claim is the alleged fraudulent conduct of Jackson Kelly, the elements of which are set forth by state law.  For instance, under West Virginia law, "[i]t is not necessary that the fraudulent representations complained of should be the sole consideration or inducement moving the plaintiff . . . [instead i]f the representations contributed to the formation of the conclusion in the plaintiff's mind, that is

(continued...)

16

provision of the BLBA an essential element of Plaintiffs' well-pleaded complaints.  The crux of Plaintiffs' claims is that Jackson Kelly intentionally withheld certain documents or portions of certain documents, which were material and relied upon.   A substantial and disputed question concerning the BLBA simply does not factor into Plaintiffs' causes of action for fraudulent misrepresentation.

The legal malpractice claims against the Rundle Defendants also fail to raise a substantial and disputed federal question.  The Fourth Circuit confronted a similar situation in *Custer v. Sweeney*, 89 F.3d 1156 (4th Cir. 1996), where it held that a malpractice claim concerning conduct in an ERISA case was insufficient to give rise to federal question jurisdiction.  The allegations in *Custer* were even more inclusive of federal law than the allegations in this case—Custer alleged that his counsel actually violated a fiduciary duty imposed by federal law in committing malpractice. *Id.* at 1160.   Nonetheless, the court found that the plaintiff's legal malpractice claim did "not implicate in any significant way the federal policies that Congress sought to promote in enacting ERISA." *Id.* at 1169.  Similarly, there is no substantial question of federal law involved in the legal malpractice claims in these cases, and exercising federal jurisdiction over the legal malpractice claims would disturb the congressionally approved balance of federal and state responsibilities that *Grable* warned against.

As was the case in *Pinney*, the flaws in the defendants' position are betrayed by the tenor of their arguments.  Jackson Kelly expressly states that the Court should exercise federal jurisdiction

---

[5](...continued)
enough . . . ."  Syl. pt. 3, *Horton v. Tyree*, 139 S.E. 737 (W. Va. 1927).  Although a state court may turn to the BLBA to establish that the documents in question were indeed considered by the ALJ in making his benefits determination, the substance of the reliance element is a creature of state law.

because "[t]here are numerous federal issues raised by this case, including the manner and method for litigating claims in the federal black lung system, as well as whether conduct is at odds with the rules and regulations of the BLBA."  (Docket 20 at 16.)  First, whether and to what extent Jackson Kelly acted intentionally to misrepresent or conceal facts in BLBA proceedings is ultimately a matter of state fraud law.  In contrast, whether and to what extent Jackson Kelly complied with the strictures of the BLBA is a defense based on conflict preemption, and although that defense certainly may raise serious issues of federal law, the well-pleaded complaint rule forbids the Court from considering such questions in determining its subject matter jurisdiction.  *See Pinney*, 402 F.3d at 446 ("[A] preemption defense 'that raises a federal question is inadequate to confer federal jurisdiction.'" (quoting *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 808 (1986))).

Second, Jackson Kelly relies too heavily on the BLBA as setting the standard of conduct applicable in these cases, particularly when it argues that the Court has subject matter jurisdiction because one issue is "whether conduct is at odds with the . . . BLBA."  (Docket 20 at 16.)  At oral argument, Jackson Kelly reiterated this point when it claimed that, in order to prove their *prima facie* case, Plaintiffs must demonstrate that Jackson Kelly violated the provisions of 29 C.F.R. § 18.14, concerning the scope of discovery in black lung proceedings before the Department of Labor.  Not one element of Plaintiffs' claims requires resolution of this, or any other, federal question.  A court may well turn to the issue of compliance with the BLBA's provisions as a proxy or indicator of whether Jackson Kelly perpetrated a fraud as alleged, but nothing in the laws of West Virginia requires illegal conduct to satisfy the elements of common law fraudulent misrepresentation.  Even if Jackson Kelly's conduct fully complied with all applicable BLBA standards, Plaintiffs could still establish every element of their fraud claims; conversely, if Jackson Kelly failed to comply with

18

BLBA standards, Plaintiffs would not automatically establish fraudulent misrepresentation under West Virginia law.

Jackson Kelly also argues that the Court must exercise jurisdiction over this case because it "could have a significant impact upon how claims are litigated in the federal black lung system." (Docket 20 at 18.)  Although this argument does not comport with the three-part jurisdictional test from *Grable*, it most closely resembles the third step, which asks whether the exercise of federal jurisdiction is consonant with Congress's intent regarding the division of labor between state and federal courts.  *Grable*, 545 U.S. at 313-14.  However, the *Grable* court framed the third step as "a possible veto" on the exercise of federal jurisdiction if there exists some indication that Congress intended the matter to be left to the states.  *Id.* at 313.  Jackson Kelly turns this factor on its head by arguing that a significant nexus to and impact upon federal law suffices to establish federal jurisdiction over a matter otherwise within the sole domain of state courts.[6]  The Fourth Circuit confronted a similar argument in *Pinney*, where the defendants argued that if "a plaintiff's state law complaint is sufficiently connected to a federal regulatory regime as to which Congress has expressed a need for uniform implementation and interpretation, that connection can provide a basis for federal question jurisdiction."  402 F.3d at 448.  The *Pinney* court rejected this argument for two reasons: first, it is all but indistinguishable from the notion of conflict preemption, which does not provide an independent basis for federal jurisdiction; and second, the court refused to "slacken in any way the principle that the substantial federal question doctrine applies only when a disputed

---

[6]  Admittedly, Jackson Kelly also squarely addresses the third step of the *Grable* analysis by arguing that no legitimate state interest would be disrupted by exercising federal jurisdiction over this case. (Docket 20 at 17.)  Nonetheless, the Jackson Kelly's brief quickly digresses into the argument that "federal question jurisdiction [exists] when a state cause of action affects an intricate federal regulatory scheme."  (*Id.* at 18.)

issue of federal law is an essential element of at least one of the plaintiffs' state claims." *Id.* at 448-49.  Similar to the *Pinney* defendants, Jackson Kelly's argument too closely resembles conflict preemption and seeks to slacken the restrictions on federal question jurisdiction imposed by Congress and the Supreme Court.

On the whole, Jackson Kelly has failed to identify substantial questions of federal law, the resolution of which Plaintiffs' claims necessarily require.  The Court reiterates and emphasizes that the party seeking removal bears the burden of establishing the propriety of federal jurisdiction, including, in this case, the necessity of resolving substantial and disputed federal questions to establish the plaintiff's claim.  *See Singh*, 335 F.3d at 280; *Mulcahey*, 29 F.3d at 151.  Because removal jurisdiction is strictly construed, all doubt is resolved in favor of remand.  *See Shamrock Oil & Gas*, 313 U.S. at 107-09; *Mulcahey*, 29 F.3d at 148.  Although Jackson Kelly's briefing adequately summarizes BLBA regulations concerning discovery and evidence, at no point does Jackson Kelly identify specific regulations that must be answered to establish one or more elements of Plaintiffs' fraudulent misrepresentation or legal malpractice claims.  Instead, Jackson Kelly argues in the abstract, stating that the BLBA is so comprehensive that any dispute approaching the BLBA process must turn on substantial questions of federal law.  Such an argument is utterly insufficient to carry Jackson Kelly's burden of demonstrating the suitability of federal jurisdiction. Accordingly, the Court must remand the cases to the Circuit Court of Raleigh County.

### III.  CONCLUSION

Based on the foregoing, Plaintiffs' Motions to Remand [Docket 14 in case 5:09-cv-700; Docket 12 in case 5:09-cv-701; Docket 16 in case 5:09-cv-854] are **GRANTED**.  The cases are

20

hereby **REMANDED** to the Circuit Court of Raleigh County, West Virginia, and the Clerk is

**DIRECTED** to send a certified copy of this Order to the Clerk of the Court of Raleigh County.

       **IT IS SO ORDERED.**

       The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any

unrepresented party.

                  ENTER:      February 14, 2011

                  _____

                  THOMAS E. JOHNSTON
                  UNITED STATES DISTRICT JUDGE